UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

---

| | |
|---|---|
| FLEET ENGINEERS, INC., | )<br>) |
| Plaintiff, | ) Case No. 1:10-cv-633<br>) |
| v. | ) Honorable Paul L. Maloney<br>) |
| CRAFT-TECH MFG. CORP., | )<br>) **MEMORANDUM OPINION** |
| Defendant. | )<br>) |

This is a diversity action for breach of contract brought by Fleet Engineers, Inc., a Michigan corporation, against defendant Craft-Tech Mfg. Corp., a New York corporation located in Bohemia, New York. Plaintiff filed this action in the Muskegon County Circuit Court, and defendant removed it to this court by notice of removal filed July 1, 2010. Defendant filed a motion to dismiss for lack of personal jurisdiction, pursuant to Fed. R. Civ. P. 12(b)(2), supported by an affidavit. Defendant filed a responsive brief, also supported by an affidavit. The motion to dismiss is now pending before Chief Judge Paul Maloney. On October 15, 2010, plaintiff filed a motion for discovery, addressed to the question of *in personam* jurisdiction. Defendant opposes the motion. Judge Maloney has referred this motion to me for decision pursuant to 28 U.S.C. § 636(b)(1)(A). For the reasons set forth below, the motion will be granted in part.

**Factual Background**

The factual background for this dispute is set forth in the affidavit of Joseph DeSantis (docket # 8-1) submitted by defendant and the affidavit of Gary Roberts (docket # 10) submitted by plaintiff. Those documents indicate that defendant is a New York corporation, engaged in the business of manufacturing metal products. Plaintiff is a Michigan corporation, with principal facilities in Muskegon. Defendant is a producer of after-market products for the trucking industry.

Plaintiff asserts that its first contact with defendant occurred in October 2004, when defendant's president called regarding a possible "brush guard job." Before this, plaintiff had no previous business contact with defendant. Defendant was apparently aware that plaintiff had previously supplied brush guards to U.S. Hardware, a government subcontractor. Defendant's president asked whether plaintiff still had the old tooling, indicating that defendant had a new contract with the federal government for a similar project. Although plaintiff did have its old tooling, it was ultimately determined that the old tooling would not work for defendant's purposes. On October 18, 2004, defendant faxed to plaintiff an unsolicited request for quotation. Plaintiff thereafter requested and received drawings and specifications for the proposed job. Over the next few weeks, a number of telephone conversations ensued between representatives of plaintiff and defendant. Plaintiff asserts that it made it clear to defendant that its existing tooling would not work and that new tooling would be required to fabricate brush guards to defendant's specifications. Plaintiff indicated that it would engage a company located in Michigan to fabricate all necessary tooling.

On or about November 10, 2004, plaintiff issued a price quote to defendant, calling for a total volume of 150,000 pieces produced over five years. (Compl., Ex. A). The quote

contained a provision that defendant would be responsible to pay for tooling at set prices if the 150,000-piece commitment were not met. The quote was thereafter amended to adjust the per-piece price. On or about November 15, 2004, defendant transmitted a purchase order to plaintiff for an initial production of 17,000 pieces. (Compl., Ex. C). Defendant's purchase order referred to defendant's government contract number and specifically recited that it represented the first release of the contract for 150,000 pieces over five years. Thereafter, plaintiff contracted for the design and manufacture of the necessary tooling, at a cost of $84,000. As part of the transaction, defendant transmitted a credit application to plaintiff.

Plaintiff manufactured the 17,000 pieces called for in the purchase order and delivered them to defendant in New York. Defendant transmitted one or more checks to plaintiff to pay for the manufactured pieces. Defendant, however, did not thereafter order any further products. In the present lawsuit, plaintiff seeks to recover the cost of tooling that it purchased in order to fulfill its contract with defendant.

In the course of investigating its claim, plaintiff alleges that it learned that defendant's contract with the federal government may have been placed through a government officer located in Macomb County, Michigan.

Defendant's affidavit avers that it has no employees, facilities, or sales agents in the State of Michigan and that it has never contracted to render services or furnish materials to Michigan companies other than the matter now before the court.

**Discussion**

When a defendant has filed a motion to dismiss for lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2), plaintiff has the burden of proving the court's jurisdiction. *Brunner v. Hampson*, 441 F.3d 457, 462 (6th Cir. 2006); *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 887 (6th Cir. 2002). In the face of a properly supported motion for dismissal, a plaintiff may not stand on its pleadings but must, by affidavit or otherwise, set forth specific facts showing that the court has jurisdiction. *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991). After plaintiff has filed a response, the court has discretion to proceed in one of three ways. The court may decide the motion on the affidavits alone, or it may permit discovery in aid of deciding the motion, or it may conduct an evidentiary hearing to resolve any apparent factual question. *Theunissen*, 935 F.2d at 1458.

In the present case, the court's subject-matter jurisdiction is based upon diversity of citizenship and requisite amount in controversy. In a diversity case, personal jurisdiction must be appropriate both under the law of the state in which the district court sits and the Due Process Clause of the Fourteenth Amendment. *Air Products & Controls, Inc. v. Safetech Int'l, Inc.*, 503 F.3d 544, 560 (6th Cir. 2007); *Neogen Corp.*, 282 F.3d at 887-88. The Sixth Circuit has explained that where the state long-arm statute extends to the limits of the Due Process Clause, "the two inquiries are merged and the court need only determine whether exercising personal jurisdiction violates constitutional due process." *Bridgeport Music, Inc. v. Still N The Water Publ'g*, 327 F.3d 472, 477 (6th Cir. 2003).

Under Michigan law, jurisdiction may be asserted over a corporation on the basis of general personal jurisdiction or limited personal jurisdiction. Plaintiff has not argued that

defendant's contacts with this state are so extensive that defendant is subject to the general personal jurisdiction of the Michigan courts. MICH. COMP. LAWS § 600.711. That leaves limited personal jurisdiction, which may be exercised over a corporation if it has one of the relationships with the State enumerated by the Revised Judicature Act. MICH. COMP. LAWS § 600.715. Among the enumerated acts that can create limited, or "long-arm" jurisdiction is "the transaction of any business within the state." MICH. COMP. LAWS § 600.705(1). A single contact with the forum state may suffice for personal jurisdiction, if it is directly and substantially related to the plaintiff's claim. *See Williams v. Garcia*, 569 F. Supp. 1452, 1454 (E.D. Mich. 1983) (citing *Khalaf v. Bankers & Shippers Ins. Co.*, 273 N.W.2d 811, 816 (Mich. 1978)). A transaction of business includes "contact with Michigan customers through the mail and the wires." *Neogen*, 282 F.3d at 892. The facts set forth in plaintiff's affidavit would appear easily to satisfy the statutory requirements of section 715(1) of the Revised Judicature Act.

Even if a plaintiff has satisfied the demands of a statutory grant of jurisdiction, however, the court's ability to exercise jurisdiction is circumscribed by the Due Process Clause. Under due-process analysis, jurisdiction over a nonresident defendant is allowable only if "the facts of the case demonstrate that the non-resident defendant possesses such minimum contacts within the forum state that the exercise of jurisdiction would comport with 'traditional notions of fair play and substantial justice.'" *Theunissen*, 935 F.2d at 1459 (quoting *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). In applying this test, the Sixth Circuit identifies three considerations: (1) the defendant must purposefully avail himself of the privilege of acting in the forum state or causing consequences in the forum state; (2) the cause of action must arise from the defendant's activities there; (3) the acts of the defendant or their consequences must have a substantial enough

connection with the forum state to make the exercise of jurisdiction reasonable. *Theunissen*, 935 F.2d at 1460.

The foregoing due-process principles will be the subject of Judge Maloney's analysis and decision in his review of defendant's pending motion to dismiss under Rule 12(b)(2). The issue now before the court is whether plaintiff should be granted discovery to allow it to meet defendant's pending motion. Defendant strenuously resists any discovery, on a number of procedural and substantive grounds. Defendant's objection to plaintiff's ability to conduct any discovery is not meritorious. While conceding that the court has discretion to allow discovery, defendant argues that exercising discretion in favor of discovery is somehow beyond this court's jurisdiction or would fundamentally change the nature of the pending motion. Defendant's arguments do not withstand scrutiny. The decision whether to review a 12(b)(2) motion on the basis of affidavits or to allow some discovery is squarely within the court's discretion. *See Market/Media Research, Inc. v. Union Tribune Pub. Co.*, 951 F.2d 102, 106 (6th Cir. 1991); *Theunissen*, 935 F.2d at 1458. Granting limited discovery will not transform the procedural posture of the case or result in any of the other consequences suggested by defendant. Rather, the issue of discovery is discretionary with the court.

Militating in favor of some discovery in this case is the absolute paucity of factual information supplied by defendant's affidavit concerning its side of this transaction. Defendant's affidavit is conclusory and provides virtually no information concerning the extent of its contacts with the State of Michigan in connection with this transaction. Defendant asks the court to put plaintiff to its burden of demonstrating facts that show a *prima facie* case of personal jurisdiction, without offering any facts that might aid the court and while resisting plaintiff's efforts to discover them.

The court has reviewed the interrogatories attached to plaintiff's motion for discovery and finds them to be, for the most part, overly broad and irrelevant to the question of limited personal jurisdiction now before the court. Plaintiff seeks, for example, an identification of all customers with whom defendant has contracted since 1986 (interrogatory 4). Such an inquiry is irrelevant to the question of limited personal jurisdiction now before the court. Under clearly established precedent, a plaintiff's cause of action must arise from the defendant's Michigan-based activities in order to justify the exercise of *in personam* jurisdiction. *See Kerry Steel, Inc. v. Paragon Indus., Inc.*, 106 F.3d 147, 150 (6th Cir. 1997). Contacts with other customers or suppliers would therefore be irrelevant to the issue of long-arm jurisdiction.[1] The only relevant inquiry concerns defendant's contacts with the State of Michigan in connection with the contract claim that forms the basis for this case. Contacts with the contracting officers of the United States Government in Macomb County would, if proven, tend to show that defendant's contacts with this state in connection with the subject matter of this lawsuit were not isolated or sporadic, but more substantial. The only interrogatory that is properly addressed to the long-arm issues now before the court is interrogatory 8, which requires defendant to describe in detail its relationship with the procurement office of the U.S. Army in Warren, Michigan.

Plaintiff's motion for discovery will therefore be granted in part, to the extent that plaintiff seeks to inquire through interrogatories or document production into defendant's contacts

---

[1] Such a far-reaching inquiry would be relevant to the question of general personal jurisdiction, but that question is not before the court. To be entitled to discovery to oppose a Rule 12(b)(2) motion, a plaintiff must have filed a response raising a *prima facie* claim of personal jurisdiction. *See O'Guin v. Ehingen GmbH*, 2010 WL 3170505, at * 2 (E.D. Mich. Aug. 11, 2010). Plaintiff's response in this case is limited to long-arm jurisdiction and raises no *prima facie* case of general jurisdiction.

with Michigan in connection with the contract at issue, including defendant's relationship and contacts with the U.S. Army Procurement Office in Warren, Michigan. Plaintiff will be granted seven days in which to propound no more than five interrogatories or document requests limited to this narrow issue. Defendant will be required to respond to those discovery requests within twenty-one days of service. Plaintiff will be granted until December 3, 2010, in which to supplement its response to the pending motion to dismiss to take into account any information garnered in discovery; defendant must respond no later than December 14, 2010, after which the matter will be considered ready for decision.

Dated: October 28, 2010      /s/ Joseph G. Scoville
                             United States Magistrate Judge